CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 24 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONELL J. BLOUNT, SR., <br> Petitioner, | ) <br> ) Civil Action No. 7:06CV00545 <br> ) |
| v. | ) **MEMORANDUM OPINION** <br> ) |
| GENE M. JOHNSON, <br> Respondent. | ) By: Hon. Glen E. Conrad <br> ) United States District Judge |

Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this action as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Blount alleges that he was denied due process with respect to a July 5, 2005 disciplinary conviction, which resulted in the loss of earned good time credits. The petition is presently before the court on the respondent's motion for summary judgment. For the following reasons, the court will grant the respondent's motion.

## Background

Blount is incarcerated at Red Onion State Prison in Pound, Virginia. On June 24, 2005, Blount was charged with disciplinary offense code 105A, aggravated assault upon a non-inmate. The individual who was allegedly assaulted was Correctional Officer J. Lambert. Lambert reported in the disciplinary offense report that Blount "struck [him] through the tray slot in the lower abdomen area with what appeared to be a sharpened spork," while he was attempting to handcuff Blount.

A disciplinary hearing was originally scheduled for June 30, 2005. On June 25, 2005, Blount was advised of his due process rights by Correctional Officer W. Smith. Because Blount was in ambulatory restraints when Smith arrived at his cell, Blount was unable to sign or receive a

copy of the disciplinary offense report or the penalty offer.[1] Instead, the report and the penalty offer were read to Blount. Blount indicated that he wanted a staff advisor, and that he wanted the advisor to assist him with requesting witnesses and documentary evidence. Blount also indicated that he wanted to be present for the disciplinary hearing, and that he did not wish to waive his right to a twenty-four-hour period of preparation prior to the hearing.

On June 27, 2005, Blount received written notice that the disciplinary hearing was scheduled for June 30, 2005. The notice provided the offense title, the offense date, and the name of the reporting officer. Blount refused to sign the notice.

On June 30, 2005, Blount received written notice that the disciplinary hearing was postponed until July 5, 2005. The notice provided the offense title, the offense date, and the name of the reporting officer. Blount also refused to sign this notice.

That same day, Blount submitted two written requests for inmate witnesses. Blount indicated that both inmates, J. Edwards and K. Bray, would testify that they heard the officers say that Blount "snatched [his] hands back in the cell," and "not that [Blount] stabbed somebody with a spork." The Inmate Hearings Officer, L. Mullins, ultimately denied the requests on the basis that the proposed testimony was irrelevant.

Blount's disciplinary hearing was held on July 5, 2005. Blount, his staff advisor, and Officer Lambert were present for the hearing. Lambert testified that Blount initially backed up to the tray slot to be restrained on the date in question. However, when the tray slot was opened, Blount stuck his arm out of the slot and struck Lambert in the stomach. A short time later, it was

---

[1] The respondent indicates that in such circumstances, the written report is placed with the inmate's property. However, Blount alleges that he did not receive a written copy of the report or the penalty offer.

2

determined that Blount had used what was found to be a sharpened spork. The object made two scratches on Lambert's stomach. Lambert was seen by medical staff at Red Onion and he was also sent to the hospital to have his wounds examined. After cross-examining Officer Lambert, Blount testified that he did not try to assault Lambert, and that the charge was written out of retaliation.

During the hearing, Blount asked Mullins to review the pod videotape from June 24, 2005 and the videotape from a handheld camera. However, Mullins determined that there was sufficient evidence to convict Blount and that it was not necessary to review additional evidence. In his written reason for the decision finding Blount guilty, Mullins emphasized that Lambert had physical injuries, that Lambert was treated by medical staff at the prison, and that he was sent to the hospital for an examination. Blount was penalized with a loss of 180 days of earned good time credits. His disciplinary conviction was affirmed on appeal by Tracy Ray, the Warden of Red Onion, and L.W. Huffman, the Regional Director.

On May 3, 2006, Blount filed a state habeas petition challenging the validity of the disciplinary conviction. By order entered June 12, 2006, the petition was dismissed as frivolous by the Supreme Court of Virginia.[2]

Blount filed the instant petition in the United States District Court for the Eastern District of Virginia on July 11, 2006. The petition was transferred to this court on September 6, 2006. In the petition, Blount raises the following claims, each of which was raised in his state petition:

---

[2]The Supreme Court's decision was devoid of any reasoning supporting the conclusion that Blount's claims were frivolous.

3

1. He failed to receive a copy of the disciplinary offense report;

2. He was denied "vital exculpatory evidence," in that Mullins refused to view the requested videotapes;

3. He failed to receive a copy of the penalty offer, as required by Division Operating Procedure (DOP) 861; and

4. The penalty offer made to him was not authorized by DOP 861.

For the reasons discussed below, the court concludes that all four claims are without merit.[3]

## Discussion

The majority of Blount's claims allege violations of due process in conjunction with his prison disciplinary hearing. Because prison disciplinary proceedings are not part of a criminal prosecution, "the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Instead, when an inmate is faced with the loss of earned good time credits, the inmate's right to due process requires only that he receive: (1) advance written notice of the charge against him; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity to call witnesses and present documentary evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 564-566. Additionally, the United States Supreme Court has held that the "revocation of good time does not comport with the 'minimum requirements of procedural due process,' unless the findings of the prison disciplinary

---

[3]Having concluded that Blount's claims fail on the merits, the court need not consider whether the decision by the Supreme Court of Virginia is entitled to deference under 28 U.S.C. § 2254(d). Accordingly, Blount's "motion to incorporate/take judicial notice" of a brief addressing this issue in another habeas case will be dismissed as moot.

4

board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 455 (1985). While state regulations may require more stringent procedural protections, "a state's failure to abide by its own law as to procedural protections is not a federal due process issue." Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. 1996) (citing Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)).

    1.    <u>Written Notice of the Disciplinary Charge</u>

Blount first alleges that he was denied due process because he did not receive a written copy of the disciplinary offense report prior to the disciplinary hearing. However, in order for the failure to provide adequate written notice to form a basis for habeas relief, an inmate must demonstrate that he was prejudiced by the defect. See Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997); Griffin-Bey v. Bowersox, 978 F.2d 455, 456 (8th Cir. 1992); White v. U.S. Parole Comm'n, 856 F.2d 59, 61 (9th Cir. 1988). Here, Blount has not demonstrated any resulting prejudice. It is undisputed that the disciplinary offense report was read to Blount on June 24, 2005, and that Blount received a copy of the hearing notice, which contained the offense title, the date of the offense, and the name of the reporting officer. Moreover, Blount's witness request forms clearly show that he was aware of the charge against him and the events upon which the charge was based. Thus, without any showing of prejudice from the alleged defect, Blount's first claim must be dismissed.

    2.    <u>The Requested Videotapes</u>

Blount next alleges that Mullins violated his right to due process by refusing to view certain videotapes. Relying on Brady v. Maryland, 373 U.S. 83 (1963), Blount contends that the videotapes "would show that Lambert fabricated the charge and would exonerate [him]."

5

Brady and its progeny establish that a prosecutor has a duty to disclose material exculpatory evidence to a criminal defendant. Brady, 373 U.S. 83, 87 (1963); United States v. Agurs, 427 U.S. 97, 110-111 (1976). "The Brady rule derives from due process and is designed to ensure fair criminal trials." United States v. Colkley, 899 F.2d 297, 302 (4th Cir. 1990). While the United States Court of Appeals for the Seventh Circuit has extended the Brady rule to prison disciplinary proceedings, Chavis v. Rowe, 643 F.2d 1281, 1286 (7th Cir. 1981), cert. denied, 454 U.S. 907 (1981), the court questions the validity of its application in this context. See Boles v. Chavis, 454 U.S. 907 (1981) (Rehnquist, J., dissenting) (noting that the Seventh Circuit's decision "comes close to disavowing the principles of flexibility and experimentation expounded in Wolff . . . and virtually mandates a full panoply of courtroom procedures for what [the Court has] heretofore described as 'diverse' and 'flexible' prison dispute settlement mechanisms"). Nonetheless, even with the application of the Brady analysis, Blount is not entitled to habeas corpus relief.

To establish a Brady violation, a criminal defendant must demonstrate that (1) the prosecutor withheld evidence that was favorable to the defendant; (2) that the prosecutor suppressed the evidence, either willfully or inadvertently; and (3) that the evidence was material. United States v. Vinyard, 266 F.3d 320, 331 (4th Cir. 2001). Evidence is favorable if it would tend to exculpate the accused or if it could be used to impeach government witnesses. United States v. Trevino, 89 F.3d 187, 189 (4th Cir. 1996). Evidence is material if there is a reasonable probability that its disclosure would have produced a different outcome. United States v. Bagley, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id.

In this case, Blount alleges that the videotapes would have shown that the disciplinary charge was fabricated. However, his conclusory allegations and speculation regarding the content of the videotapes fail to satisfy the Brady test. "The mere possibility that an item of undisclosed information might have helped [his] defense, or might have affected the outcome of the [hearing], does not establish 'materiality' in the constitutional sense." Agurs, 427 U.S. at 109-110; see also United States v. Paulino, 1996 U.S. App. LEXIS 30032, *4 (4th Cir. Nov. 20, 2006) ("Mere speculation that Brady material exists does not justify fishing expeditions in government files."); United States v. Brown, 360 F.3d 828, 833 (8th Cir. 2004) ("[M]ere speculation that materials may contain exculpatory evidence is not . . . sufficient to sustain a Brady claim."); United States v. American Radiator & Standard Sanitary Corp., 433 F.2d 174, 202 (3d Cir. 1970) (. . . appellants' mere speculation about materials in the government's files [does not require] the district court or this court under Brady to make the materials available for their inspection"). Because Blount has failed to carry his burden under Brady, Mullins' failure to review the videotapes did not violate Blount's right to procedural due process.[4]

3. The Penalty Offer

Blount's remaining claims pertain to the penalty offer that he received on June 25, 2005.

---

[4] The court also notes that Mullins' refusal to review the videotapes did not violate the procedural safeguards outlined in Wolff. As previously stated, Mullins ultimately determined that the hearing testimony provided sufficient evidence upon which he could base his decision, and that no additional evidence was necessary. Having reviewed the record, the court agrees with the respondent that this decision was "entirely within [Mullins'] discretion," and that it was "justifiable to avoid disruption and interference with the [disciplinary] proceeding." Segarra v. McDade, 706 F.2d 1301, 1305 (4th Cir. 1983); see also Wolff, 706 F.2d at 1305 (recognizing that prison officials must have discretion to keep disciplinary hearings within normal limits and that "lack of necessity" may serve as a basis for refusing to hear a witness or consider documentary evidence) and Young v. Bennett, 2007 U.S. Dist. LEXIS 8618, *6 (W.D. N.C. Feb. 5, 2007) (holding that a disciplinary hearing officer's refusal to consider a requested videotape did not violate the procedural safeguards outlined in Wolff).

7

Specifically, Blount contends that he did not receive a written copy of the penalty offer, as required by DOP 861, and that the penalty offer was not authorized by DOP 861. Because a state official's failure to abide by state procedural regulations does not present a federal due process issue, Riccio, 907 F.2d at 1469, Blount's remaining claims are not actionable under § 2254.

## Conclusion

For the reasons stated, the court will grant the respondent's motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the petitioner.

ENTER: This 24th day of April, 2007.

_____
United States District Judge